## COLEMAN-NELSON GASOLINE CO. v. MONTGOMERY.

No. 20064.   Opinion Filed May 26, 1931.

Rehearing Denied Oct. 6, 1931.

Sam A. Neely and Burns McCain, for plaintiff in error.

Charles P. Gotwals and John T. Gibson, for defendant in error.

CLARK, V. C. J. This action was commenced in the district court of Muskogee county, by plaintiff in error, Coleman-Nelson Gasoline Company, a corporation, against defendant in error, E. P. Montgomery, to enjoin the defendant in error from trespassing upon certain real estate and from tearing down and removing certain improvements thereon.

The parties will be referred to as they appeared in the trial court.

Plaintiff alleged it was the owner of the said properties and in possession thereof. The properties consisted of real estate and improvements thereon by way of oil refinery, buildings, machinery, etc.; that defendant without notice or warning entered said premises and was attempting to take possession thereof and tear down and remove the improvements thereon; that unless restrained defendant will continue to trespass upon and remove and destroy plaintiff's property, and plaintiff will be irreparably injured. That defendant is insolvent and unable to respond in damages. Plaintiff prayed for judgment restraining the said defendant from trespassing on said property or removing the improvements therefrom, or taking possession thereof. Said petition was verified.

Defendant filed a general denial and alleged he was in possession of said property. That he was entitled to possession of said property; that he was the owner thereof and deraigned his title to said real estate by deed from Muskogee county, and he attached copies of the deed and bill of sale to his answer. Defendant prayed that his title to said property be quieted in him, and that he be decreed possession of said property, and that plaintiff be enjoined from interfering with his possession.

By way of reply, plaintiff denied the allegations of the answer, and alleged that the deed from the county of Muskogee to the defendant was void for the reason not sufficient notice was given of the purchase thereof by defendant, and that the resale deed from the county treasurer to the county for said property was void for the reason the resale deed shows on its face that sale was

made to the county on the 9th of August, 1926, whereas the sale for delinquent taxes was completed on the 12th day of July, 1926; that the bill of sale was void for the reason the property attempted to be sold was not personal property, but real property.

Judgment was entered for defendant, quieting his title to the property and giving him possession thereof, and enjoined the plaintiff from interfering with defendant's possession.

Motion for new trial was filed and overruled. Plaintiff below brings the cause here for review.

The plaintiff in error contends that the court erred in denying plaintiff a permanent injunction, and in quieting and settling title in the property in the defendant.

The question of possession was before this court in the case of Montgomery v. Coleman-Nelson Gasoline Co., 130 Okla. 14, 264 Pac. 895, on appeal from the temporary injunction, and the court held that defendant in error in that case, plaintiff in error in the case at bar, was in possession of the property at the time the suit was filed.

At the time the temporary injunction was granted, from which order the appeal was taken, which was decided in Montgomery v. Coleman, supra, the issues were not made up.

The question now before the court is based upon the answer of defendant in error setting up his title and praying that his title be quieted in him and for possession of the property.

The county deed issued to the defendant is based upon property acquired by the county by resale, and is governed by section 5, chap. 158, Sess. Laws 1923, which provides in part as follows:

"* * * Any property acquired by the county under the provisions of this section may be sold by the treasurer at such price as may after notice by publication be approved by the board of county commissioners. Said notice of publication shall be given by the treasurer in the official county paper, and shall embrace a description of the property, the price, and to whom proposed to be sold, and stating that he will, on a given date to be stated in the notice, apply to the board of county commissioners for its approval of said sale, and for an order directing that deed for said property be executed by the chairman of said board. The proceeds of sale of any property acquired by the county under the provisions hereof shall accrue to the common school fund of the county."

The only contention raised by the plaintiff in error that the county deed to defendant in error was void was that sufficient notice was not given of the sale from the county to the defendant.

Section 5, chap. 158, Sess. Laws 1923, does not state the length of time such notice shall be given, but states, "Said notice of publication shall be given. * * *"

We construe this provision as meaning that a reasonable notice shall be given and that a reasonable notice is such notice as required by statute in that character of proceeding.

The evidence shows that the offer to purchase by the defendant was made on the 13th day of August, 1926, notice by publication was had on the 14th of August, 1926, showing the application would be made to the board of county commissioners for the approval of the sale on August 16, 1926, and the sale was approved by the board of county commissioners and the sale accepted and approved on the 16th day of August, 1926.

In the case of Smith v. Bostaph, 103 Okla. 258, 229 Pac. 1039, this court said in the second paragraph of the syllabus:

"In matters pertaining to tax sales, statutes prescribing the manner of service of notice and the issuance of tax deeds thereunder are mandatory and not directory."

In the case of Clewell v. Cottle, 99 Okla. 84, 225 Pac. 946, in the third paragraph of the syllabus, this court said:

"A tax deed void on its face vested in plaintiff no interest in the title to the land therein described, and, as plaintiff must prevail on the strength of his own title, a judgment clearing his title thereto is void."

The notice given in the case at bar is not a reasonable notice, and not such notice as contemplated by the statute, supra, and the giving of the notice being mandatory, as held in the case of Smith v. Bostaph, supra, the deed of the defendant in error was void. This court held in the case of Clewell v. Cottle, supra, the void deed vests no interest in the property, and the defendant in error acquired no interest in the property by such deed.

The possession of the property in question being in plaintiff in error at the institution of the suit, as heretofore decided by this court in Montgomery v. Coleman-Nelson Gasoline Co., supra, and the deed of the defendant in error being void, the judgment of the trial court is hereby reversed, with directions to enter judgment for plaintiff in error.

LESTER, C. J., and HEFNER, CULLI-

288

SON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., dissents.

## On Application for Rehearing.

KORNEGAY, J. (dissenting). The opinion of the court was filed May 26, 1931. The case-made, as shown by the filing mark, was lodged here December 20, 1928. There does not appear to have been an oral argument. Following the usual practice, the case was submitted on briefs and assigned to some member to write the opinion of the court and submit it to the conference for approval. This submission was made on Monday, May 25, 1931, and the opinion approved.

The opinion reversed the action of the lower court holding the defendant to be the owner of the land. Not content with this, the direction is contained in the opinion to enter judgment for plaintiff in error. After the opinion was made public, the party in whose favor the judgment below was rendered, the losing party here, filed a petition for rehearing, with proof of service of copy on opposing counsel. Petition for rehearing was considered on August 2, 1931. The matters urged were deemed of sufficient concern to justify calling for a response, and time as asked for was allowed. A second extension was asked for and granted. The entries are:

"June 30, 1931 Plaintiff to file response to petition for rehearing within 10 days. Notice to above attorneys.

"July 7, 1931 Plaintiff 20 days from date to file response to petition for rehearing. Notice to above attorneys.

"July 26, 1931 Motion for additional time to brief.

"July 28, 1931 Plaintiff 10 days additional to file response to petition for rehearing. Notice to above attorneys."

As to why the attorneys did not answer, the writer is not advised. Perhaps they did not think it necessary, perhaps they overlooked it, perhaps they thought it useless. An inspection of the case-made brought here shows that the petition was filed in the court below on October 8, 1926; that an answer was filed on November 8, 1926. The answer as exhibit "A" set up what is headed "County Deed." It was dated August 23, 1926, executed by C. R. Henson, chairman of the board of county commissioners, and regularly acknowledged and filed for record August 26, 1926, at 4 o'clock p. m. There was also a certificate of sale of some personal property made by the delinquent personal tax collector, W. F. Blakemore of Muskogee county.

Motions to strike paragraphs 4 and 5 of the answer were filed November 15, 1926. These paragraphs set up the execution of the deed and certificate. Motion was overruled, followed by demurrer to paragraphs 4, 5, and 6. This was overruled March 26, 1927, and a temporary restraining order continued in force, and cause set for hearing April 1, 1927.

Reply was filed to answer. It contained a general denial, and attacked the deed of conveyance from the county, because the offer to purchase from the county was made August 13, 1926, and the sale consummated and approved by the board of county commissioners, August 16, 1926. There was a further allegation that the attempt to deprive plaintiff of its right to redeem the property described in the county deed was contrary to law and void. Complaint was made that the resale tax deed, made by the county treasurer conveying the land to the chairman of the board of county commissioners, was void and of no effect because the resale tax deed showed on its face that the sale was made to the county by the county treasurer on the 9th of August, 1926, while the sale of the lands at resale for delinquent taxes was completed and closed on the 12th day of July, 1926. Attack was made on the certificate of sale because sale was not had in the manner as provided by law, and the property described was real property.

Cause was tried on June 20, 1928, before Honorable W. J. Crump, district judge. Judgment entry was "ok'd" as to form by the attorneys. It recites the hearing of testimony and consideration of evidence, and "finds all the issues involved herein on the petition of the plaintiff, the answer of defendant, and the reply of plaintiff in favor of the defendant."

The decree was that plaintiff take nothing, and the temporary injunction issued October 16, 1926, was dissolved and set aside. Defendant was adjudged to be the owner in fee simple and entitled to the possession, and plaintiff had no right, title, interest, or equity therein, and that defendant be let into the immediate possession. It quieted title in defendant in error in the property. Motion for new trial was filed by plaintiff below, overruled, and case-made followed here.

The plaintiff offered as a witness Mr. Nelson Coleman, president of plaintiff company, who described the property as 9 5/7 acres and an old refinery. He claimed it was in possession and control of plaintiff "on or about" the 5th or 6th of October, 1926. On

the 5th he found Montgomery on the property tearing down the tanks and razing the plant, and he warned him to "get off the property," telling him plaintiff owned the property since 1923, but he refused to stop and leave the premises. He details his own acts as follows:

"A. I went back to Tulsa and got a lawyer and came to Muskogee to get out a temporary injunction to stop this man from taking the property down and carrying it off. The Court: You caused the suit to be filed that we are trying now? A. Yes, sir. Mr. McCain: During this time, did you have any one looking after the property for the company? A. Yes, sir. Mr. De_____ lived on the property, and Mr. Sanders of Tulsa, who had been with the company for nine years in the capacity of supervisor of all the property. Q. What were their duties? A. To look after the property and see that it was not taken off or destroyed. Q. They were to perform that service for the plaintiff? A. Yes, sir. Q. And you had this suit instituted to protect the possession of the plaintiff in that property? A. Yes, sir. Q. That's all."

On cross-examination, as to paying taxes, it was admitted by the attorney that there was $300 of taxes due and unpaid in Muskogee county on the property. With this plaintiff rested.

Defendant Montgomery testified about writing to the parties about his purchase of the property, and testified that he was in possession, and was removing some tanks when stopped by the injunction order. He was cross-examined by Mr. McCain, attorney for the Coleman-Nelson Company, and stated he had written to the parties in interest, and letters not returned. Demurrer was interposed to this evidence. The court asked Mr. McCain to point out what was wrong. The reply was concerning publication recited in the deed, and the following occurred at page 34 of the case-made:

"Mr. McCain: Well, on the face of the deed it does not show that proper publication was had, it states a conclusion of law. That deed should state that publication was had in a certain manner and they have failed to do so, and I think the deed is void. The Court: In answer to the reason given by plaintiff's counsel, and in overruling the demurrer interposed by the plaintiff, the court calls attention to the fact that the deed decites, to wit: 'Whereas, the county treasurer caused notice of said offer to be given by publication in the Muskogee Times Democrat, an official county paper, published at Muskogee, Okla., describing the land according to its legal subdivision, the price offered therefor, to whom it was proposed to be sold, and the date on which application would be made to the board of county commissioners of said county to approve

said sale; and'. the presumption is that the county treasurer and the county commissioners, being officers of the state, did their duty, and presumption is that notice was given as required by law, demurrer overruled. Mr. McCain: To which the plaintiff excepts. The Court: Let the record show that the plaintiff has a complete abstract of the tax proceedings herein, and that the defendant makes no objection to the introduction of certain instruments therein as to their correctness."

The proceedings, contained in the sale by the county to defendant were offered in full, showing that several tracts were included, and to different purchasers, and inserted one time in the Muskogee Times Democrat, an official paper. The resolution to accept the offer was set out. All were the regular statutory proceedings prescribed to effect a transfer of county owned property acquired, as indicated herein, by virtue of an original tax sale with no bidder, bought in by the county, and being held for the prescribed time, and exposed to public auction a second time, and no bidders offering to buy for taxes, and sold to county, and deed executed to county.

In the county deed is a recital as to how the county obtained title, viz., by a resale held beginning April 1, 1926, and continuing from day to day till July 12, 1926. It recited an offer to the county submitted August 13, 1926; its publication and approval of sale, and the conveyance is absolute. From this it appears that it was practically conceded that the county by tax sale had acquired title, and there was no complaint as to those proceedings, and the only point of dispute was the length of notice of offer.

The brief of plaintiff below and plaintiff in error here was based on two points. First, that a temporary injunction had been granted, and that the evidence to obtain it was practically the same as it was on the trial, and that appeal had been taken from the order granting the temporary injunction, and on the appeal this court held that it was proper to grant the temporary injunction, as shown in the case of Montgomery v. Coleman-Nelson Gasoline Co., 130 Okla. 14, 264 P. 895.

The second ground urged was the defect in notice of purchase by defendant from county. Complaint is made of evidence to show possession. No attack is made on any of the tax sale proceedings, under which the title of plaintiff was vested in the county. Some decisions were referred to as to an individual's duty in acquiring a tax title, where he was the bidder at the tax sale. On the whole, either unwittingly or inadvertently, the attack on the tax sale was

not urged in any manner. However, the plaintiff was not concerned with the procedure by which the county sold to defendant. His interest and redemption right ended when the "tax deed" was made to the county.

The brief of the defendant in error showed a familiarity with the law regulating tax sales, whether resulting in outsiders buying, or the land being bought in by the county. Also it showed familiarity with the law arising where one offering was made, and also where it was necessary to have a second offering or resale, and also the law applicable where at such resale an outsider bought the property, and also where it was bid in by the county. The slightest reading of the brief should arouse attention to the difference. Beginning at page 9 of the brief, a resume is had of the laws on the subject, and is as follows:

"In considering this point it will be instructive to consider the legislation on this subject. Going back to the Revised Laws of Oklahoma, 1910, it is observed that the general scheme for the collection of taxes and the sale of property for delinquent taxes is substantially the same as it is now. When taxes become delinquent, generally January 1st of each year, the county treasurer sells the property for such delinquent taxes November following. In the event of the failure of bidder at the sale so held, the lands are bid off in the name of the county. After the expiration of two years from the date of this sale, the statutes authorize the county treasurer to hold what is termed a resale of this property and at the resale, the property may be sold to the highest bidder for cash. While the 1910 Revised Statutes were in force no provision was made in the event of a failure of bidders at this resale. The section of the 1910 Revised Laws applicable is section 7411, and the portion referring to the subject under consideration is as follows:

" 'Same—Sale. On the day such real estate is advertised for sale, the treasurer shall between the hours of one o'clock and four o'clock p. m. at the treasurer's office, where by law the taxes are made payable, sell at public auction for cash to the highest bidder, each tract or parcel of said real estate, and in case said real estate is not sold for want of bidders, he may adjourn said sale from day to day for a period not exceeding three days.'

"Section 7412, Revised Laws 1910, sets forth the procedure for the return of sale and the execution of the deed therefor. Evidently, it was found that the county was becoming the owner of a large amount of real estate standing in its name which thereafter did not appear on the tax rolls and from which the county derived no substantial revenue. As we believe, the Legislature having this situation in mind, in 1915 amended section 7412, Revised Laws of 1910, by inserting therein the following provision (see Session Laws 1915, c. 47, p. 66) :

" 'If any of the property offered for sale fails to bring the amount of taxes due and unpaid, with accrued interest and penalty, then the county treasurer shall rebuy the same and a tax deed shall issue to the county treasurer for the use and benefit of the county and the title shall become invested in the county treasurer and his successor in office for the use and benefit of the county; provided, that at any time after the title becomes invested in the county treasurer same may be sold at private sale at a price to be approved by the board of county commissioners, the proceeds of which shall be distributed in the same manner as is now provided by law, for the distribution of the tax covered by said sale. Provided, that before the sale is approved by the board of county commissioners, the treasurer shall give notice by publication in at least two issues of the official paper of the county, said notice giving the description of the property sold, to whom sold, and price at which same is sold, and stating that he will ask the board of county commissioners at their next meeting to approve said sale.'

"In 1919 further amendment was made and the provision above quoted was omitted from section 7412, Revised Laws of 1910, but a provision similar in its nature and intended to accomplish the same purpose was inserted by amendment in section 7411, Revised Laws of 1910, reading as follows (see Session Laws 1919, chap. 130, p. 186) :

" 'And then in case there be no other bidder for any real estate so offered for sale, the county treasurer shall bid off the same in the name of the county for the amount of taxes, penalty and costs due thereon and shall issue deed therefor in the name of the chairman of the board of county commissioners and his successors in office for the use and benefit of the county, and thereafter said property shall be exempt from assessment for ad valorem taxes so long as title is held for the county; provided, that in no event shall the county be liable to the state or any taxing district thereof or to any special assessment lien-holder for any part of the amount for which any such property may be sold. Any property acquired by the county under the provisions of this section may be sold by the treasurer at such price as may after notice by publication be approved by the board of county commissioners. Said notice of publication shall be given by the treasurer in the official county paper and shall embrace a description of the property, the price and to whom proposed to be sold, and stating that he will on a given date to be stated in the notice apply to the board of county commissioners for its approval of said sale and for an order directing that deed for said property be executed by the chairman of said

board. The proceeds of sale of any property acquired by the county under the provisions hereof shall accrue to the common school fund of the county.'

"Section 7411, Revised Laws of 1910, became section 9745, C. O. S. 1921, and the provisions as to the sale of lands bid in for the county are identical with the provisions of said section 7411, R. L. 1910, as amended in 1919. In other words, the compilers of C. O. S. 1921, made no change. In 1923 (c. 158, s. 5) this section was again amended to one to provide for the distinction between vacant lots and improved property and the provisions with reference to the sale of any property acquired by the county under the provisions of the section remained the same. There has been no further amendment of this provision.

"From this it appears that under the law as it stood when the Revised Laws of 1910 were in force and effect, no provision was made for the sale of lands acquired by the county at resale. When this provision was first made by the Legislature of 1915, it provided that before the sale be approved by the county commissioners, the treasurer should give notice by publication 'in at least two issues of the official paper of the county.'

"When this section was amended in 1919, this provision was omitted, nor does it appear in any subsequent compilation or amendment.

"So far as we are aware, this particular provision has not heretofore been considered by this court. The cases cited by counsel of the plaintiff, on pages 25 and 26 of the brief, throw no light upon the subject. We concede some publication to be necessary and in the instant case a publication was had. The statute has been literally followed, and we think it not within the province of a court to assume that the Legislature intended something or fixed a time for publication without stating it plainly in the act, and this is particularly applicable where, as in this legislation, the provision for a particular length of time of publication or number of issues of the newspaper was by the Legislature itself deliberately omitted.

"It is fair to assume that the length of the time of the publication, as provided by the 1915 Act, became cumbersome, leading to delays and failures to close proposed sales; that in order to effectually dispose of burdensome property belonging to the county which produced no tax revenues, it was necessary to make deals with prospective purchasers promptly and not after a delay required by lengthy advertising; that the experience under the provisions of the Act of 1915 was unsatisfactory, otherwise, it would not have been changed by the Legislature in 1919. In the instant case publication was had, as is shown by the testimony of the plaintiff, in the Muskogee Times-Democrat, August 14, 1926, showing that the application would be made to the board of county commissioners for the approval of the sale on August 16, 1926 (C-M. pp. 37-38; plaintiff's brief, pp. 15-16). The plaintiff fails to cite a single case from this or any other state bearing on the point in controversy.

"This being the case, the judgment of the lower court should not be disturbed."

In the trial, no evidence was offered as to the evidence adduced on the application for the temporary injunction, and consequently we do not know what that evidence was. However, in the brief reference is made to the decision of this court in Montgomery v. Coleman-Nelson Gasoline Co., 130 Okla. 14, 264 P. 895. Referring to the case as published, if the statements of fact therein contained are accepted, the defendant took possession of the property after getting his deed, was dispossessed by the appointment of a receiver, discharge of receiver, and turning over possession to the opposite party. The court itself announces the doctrine as to the effect of hearings for temporary injunctions. It says at page 14 of 130 Okla.:

"At the time the temporary injunction was granted, the case was not at issue on the merits, and the order of the court was not an adjudication of the issues between the plaintiff and defendant on the merits. The matter here presented by the defendant for consideration is the propriety of a court of equity interfering by injunctive orders with the possession of a party who has, without breach of the peace, actually acquired physical possession of property purchased at a tax sale.

"The law is well settled that a court of equity will not interfere by injunction with the possession of a party for the purpose of transfering the possession to another.

"The defendant testified that, after he received his tax deed, he went upon the property and took possession. The evidence clearly shows that the plaintiff was never evicted from the possession of the property, and the trial court in its findings found that the allegations in the petition of plaintiff were true, and it alleged that it was and had been in peaceful possession for a period of three years. The evidence as to possession is conflicting."

The principles of law announced were somewhat conflicting with the application. The opinion rendered in the present case calls for a reversal of the trial court, a setting aside of the action of the county commissioners in selling the land, who appear to have followed strictly the letter of the law, an annulment of all the proceedings to collect the taxes, and a cancellation of not only the "county deed" conveying the land,

but the deed to the county, and a restoration by court decree to the delinquent taxpayer. It, in practical effect, if followed, will cause practically all the lands sold to other parties to be restored to the owners who have neglected to pay taxes. The exact language is:

"The evidence shows that the offer to purchase by the defendant was made on the 13th day of August, 1926, notice by publication was had on the 14th of August, 1926, showing the application would be made to the board of county commissioners for the approval of the sale on August 16, 1926, and the sale was approved by the board of county commissioners and the sale accepted and approved on the 16th day of August, 1926.

"In the case of Smith v. Bostaph, 103 Okla. 258, 229 P. 1039, this court said in the second paragraph of the syllabus:

" 'In matters pertaining to tax sales, statutes prescribing the manner of service of notice and the issuance of tax deeds thereunder are mandatory and not directory.'

"In the case of Clewell v. Cottle, 99 Okla. 84, 225 P. 946, in the third paragraph of the syllabus, this court said:

" 'A tax deed void on its face vested in plaintiff no interest in the title to the land therein described, and, as plaintiff must prevail on the strength of his own title, a judgment clearing his title thereto is void.'

"The notice given in the case at bar is not a reasonable notice, and not such notice as contemplated by the statute, supra, and the giving of the notice being mandatory, as held in the case of Smith v. Bostaph, supra, the deed of the defendant in error was void. This court held in the case of Clewell v. Cottle, supra, the void deed vests no interest in the property, and the defendant in error acquired no interest in the property by such deed.

"The possession of the property in question being in plaintiff in error at the institution of the suit as heretofore decided by this court in Montgomery v. Coleman-Nelson Gasoline Company, supra, and the deed of the defendant in error being void, the judgment of the trial court is hereby reversed, with directions to enter judgment for plaintiff in error."

Promptly the losing party came back with an application for rehearing, calling the court's attention to its having overlooked in the discussion that the point involved did not concern a tax deed, but an ordinary deed by the legal holder to a purchaser. Evidently the attorneys on the other side recognized the justice of the position as, after getting extra time on two occasions to file counter brief, they have not done so.

The necessity for publishing the offers to buy more than once is not prescribed by the statute, the clear inference being the other way. The county officers entrusted with the administration of the law, and enjoined by their official oaths to do so faithfully, should not lightly be held to have, through ignorance or design, failed in the performance of their trust. The time has come in this state when those who pay their taxes are demanding that all should pay without discrimination. The Legislature makes the law. The county officials, as it seems to me, have followed the law, and the judge of the lower court seems to have followed it. The loser in the lower court is the winner here. The grounds for the reversal are promptly challenged. The challenge was supported by the statutes, and ample "case law." The beneficiary of the decision here does not think enough of the matter to even undertake to sustain the decision here, after full opportunity. That alone should arrest attention and cause all concerned to think. How often in life are we brought face to face with an ancient couplet:

"Alas the task, the thinking few,

"How many think, who think they do."

Clearly, there is no reason for the reversal of the lower court in this case, and a rehearing should be granted.

I am authorized to say that Mr. Chief Justice LESTER and Mr. Justice RILEY concur in this dissent.

Note.—See under (2) 21 A. L. R. 1216; 26 R. C. L. p. 406; R. C .L. Perm. Supp. p. 5772 (3) 25 R. C. L. p. 771, et seq.